# STATE OF MICHIGAN

# COURT OF APPEALS

In re N. B. GINNS, Minor.

UNPUBLISHED
April 6, 2017

No. 334913
Kent Circuit Court
Family Division
LC No. 16-051751-NA

Before: M. J. KELLY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child under MCL 712A.19b(3)(f), (g), (h), and (j).[1] We affirm in part, vacate in part, and remand to the trial court.

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been met by clear and convincing evidence. MCL 712A.19(b)(3); *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review the trial court's determination for clear error. *Id*. "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). "We give deference to the trial court's special opportunity to judge the credibility of the witness." *Id*.

NBG lived with his great-grandmother, BR, for his entire life. When NBG was approximately one month old, BR drove father to a store where father bought diapers for NBG. Father has otherwise never provided financial assistance to NBG. Father last visited NBG in 2013 when NBG was about six months old. Father has not visited or contacted NBG since that time.[2]

BR became NBG's legal guardian on April 5, 2015. BR made it clear to father on multiple occasions that father was free to visit NBG any time he wanted with one condition: that BR had to be present while father visited NBG. Father claims that BR prevented and "denied"

---

[1] The mother's parental rights were voluntary terminated. Accordingly, she is not a party to this appeal.

[2] The child's mother testified that father saw NBG in December 2014 when NBG was about two years old. However, the trial court determined that, on that date, the purpose of father's presence was to visit NBG's mother and discuss a potential DNA test, and that NBG's presence was merely a "coincidence" and an "added benefit."

-1-

him from seeing NBG. However, father also testified that he never went to court to seek custody or parenting time.

As of the date of trial, father was incarcerated at Carson City Correctional Facility, where he had been since at least February 12, 2015. Father's earliest release date is in 2020. Before being incarcerated, father worked two jobs and had his own apartment. Father also worked a paid position while incarcerated. As of the date of trial, father had $48.95 in his prison account. Father testified that he did not have any jobs or housing arranged for when he is released from prison. Father testified that he does have the ability to send letters and make telephone calls from prison, but the only person he had ever contacted from prison was his mother.

Father argues that termination of his parental rights was improper under MCL 712A.19b(3)(f). Termination under MCL 712A.19b(3)(f) is appropriate where the court finds by clear and convincing evidence that:

> (f) The child has a guardian under the estates and protected individuals code, 1998 PA 386, MCL 700.1101 to 700.8206, and both of the following have occurred:
>
> (*i*) The parent, having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition or, if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.
>
> (*ii*) The parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition.

Father contends that he had neither the ability to support NBG, nor did he have the ability to visit, contact, or communicate with NBG during the two-year period before the filing of the petition. We disagree.

Father has not supported NBG since the child was one month old. Father claims that there was no testimony indicating that he had the ability to support NBG during the two-year period before the filing of the petition. However, father did testify that, before going to prison, he worked two jobs and paid rent on an apartment. The trial court could reasonably infer that, if father worked two jobs and had the ability to pay rent, then he did have the ability to support NBG. Father also testified that he worked a paid position while incarcerated. However, he did not have any mechanism in place to use any of his earned funds to support NBG. Moreover, father testified that on one occasion he attempted to send money and clothing to NBG, but that the package was returned to him because of a faulty address. Regardless of whether or not NBG ever received the package, father demonstrated that he did have the *ability* to support NBG.

Father has not visited NBG since the child was six months old. Father claims that he did not have the ability to visit, contact, or communicate with NBG because BR "restricted" him from seeing NBG, and because he was incarcerated. As stated previously, testimony indicated that BR told father on multiple occasions that father had an open invitation to visit NBG at any

time as long as BR was present. Whether or not father agreed with that rule, he failed to either abide by it or to seek a court order allowing him visitation under alternate circumstances. Moreover, father testified that he had the ability to make phone calls and send letters from prison, but that the only person he contacted was his mother. Therefore, the trial court did not clearly err in terminating father's parental rights under MCL 712A.19b(3)(f).

Given our conclusion that the trial court did not clearly err by concluding that one statutory ground for termination existed, we do not need to address the additional grounds for termination. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Additionally, the trial court must find by a preponderance of the evidence that termination was in the child's best interest. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's findings of fact are reviewed for clear error. *In re HRC*, 286 Mich App at 459. "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id*.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In determining a child's best interests, the trial court may consider the child's bond to his parent; the parent's parenting ability; the child's need for permanency, stability, and finality; and the suitability of alternative homes. *In re Olive/Metts* 297 Mich App 35, 41-42; 823 NW2d 144 (2012). "[A] child's placement with relatives weighs against termination . . . " *Id*. at 43 (quotation marks and citation omitted). "[T]he fact that the [child was] in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the [child's] best interests." *Id*. (quotation marks and citation omitted). "A trial court's failure to *explicitly* address whether termination is appropriate in light of the [child's] placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. *Id*. (citation omitted, emphasis added).

Here, NBG lived with BR, who was the child's great-grandmother—a relative as defined in MCL 712A.13a(1)(j). The trial court did a best-interest analysis in which it addressed NBG's lack of a bond to father; father's parenting ability; NBG's need for permanency, stability, and finality; and the suitability of alternative homes, such as BR's. However, the trial court failed to *explicitly* address whether termination was appropriate in light of NBG's placement with a relative. See *In re Olive/Metts*, 297 Mich App at 43. The trial court did discuss "the advantages of [BR's] home." However, that discussion seemed to address the factor of the suitability of alternative homes, rather than an explicit discussion of NBG's placement with a relative. Because the trial court was required to address NBG's placement with a relative at the time of the termination hearing, it clearly erred when it failed to do so. See, e.g., *id*. at 43-44. See also *In re Mays*, 490 Mich 997; 807 NW2d 304 (2012). Therefore, the trial court clearly erred when it determined that termination was in the best interests of the child.

We affirm the portion of the trial court's order finding that a statutory basis for terminating father's parental rights was proven by clear and convincing evidence. We vacate the portion of the trial court's order finding that termination was in the child's best interests. We

remand to the trial court for proceedings to determine if termination is in the child's best interests, considering that the child was with a relative at the time of the termination hearing.

We retain jurisdiction.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Amy Ronayne Krause

# Court of Appeals, State of Michigan

## ORDER

Michael J. Kelly
Presiding Judge

In re N B Ginns Minor

Docket No. 334913

William B. Murphy

LC No. 16-051751-NA

Amy Ronayne Krause
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 14 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the trial court is to determine if termination is in the child's best interest. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Michael J. Kelly

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

April 6, 2017
Date

Chief Clerk